# Ablum Brown and Company

Two North LaSalle Street, Suite 800, Chicago, Illinois, 60602

January 13, 2011

<u>CONFIDENTIAL</u>

Brian McGowan, Executive Vice President – Corporate Relations
MacFarlane Group, Inc.
6950 W 56th Street
Mission, KS 66202

Dear Brian:

    We are pleased to submit to you this letter agreement (the "Engagement Letter") which sets forth the terms pursuant to which Ablum Brown and Company ("Ablum Brown") shall provide financial advisory and investment banking services to **MacFarlane Group, Inc.** (the "Company") **and its related entities**, as set forth herein.

1. **Engagement and Scope of Services**

    The Company has engaged Ablum Brown as its exclusive financial advisor except for any requirements or conditions that are still outstanding from the Agreement dated 08/05/2010, to provide the following financial advisory and investment banking services, as requested by the Company:

    (A)    Lead and coordinate due diligence of the Company in order to obtain up to $90 million of (i) senior debt financing or (ii) subordinated loan with or without warrants or (iii) a combination of subordinated loan with or without warrants and equity. The equity can be either preferred stock or common stock or any combination. Any of these options individually or in any combination will be referred to as the "Financing"). The Financing will be used first to extinguish the Company's current debt with a New York hedge fund and secondly for working capital purposes.

    (B)    Act as exclusive financial advisor solely for the purposes of assisting the Company in obtaining the Financing. The exclusivity will be for a period of 60 days from the signing of this Engagement Letter. However, the Company agrees that this agreement shall remain exclusive upon the presentation of a Letter of Intent (Term Sheet) from a lender introduced by Ablum Brown to the Company and accepted by the Company.

    (C)    Assisting in negotiations with lenders and other related outside parties as it solely pertains to the Financing.

EXHIBIT A

(D)     Render such other financial advisory and investment banking services as may specifically, from time-to-time, be agreed upon by Ablum Brown and the Company;

(E)     The Company in its sole discretion can decide to accept or not accept any Financing or refuse to negotiate or continue any negotiations with any Financing investor.

It is understood that the following lenders contacted on MacFarlane's behalf by Ablum Brown will be covered under the exclusivity arrangement and covered under the Engagement Letter as specified in the Compensation section of the Engagement Letter.

- Accretive Solutions Capital Partners
- AEA Investors
- Ally Financial
- American Capital Strategies
- Angelo Gordon and Company
- Apex Fundamental Partners
- Apollo Investment Corporation
- Ares Management
- Arrowhead Mezzanine
- Atalaya Capital
- Bayside Capital
- Black Canyon Capital
- Black Diamond Capital Management
- Black Rock Kelso
- Blue Crown Funding
- Brooklyn Park Asset Management
- Core Capital
- Crown Capital
- Crystal Financial
- Cyan Partners
- DE Shaw
- Diamond Creek Capital
- Farallon Capital
- Fifth Street Finance Corp
- First Capital

2

- FrontPoint Partners
- GarMark Partners
- Garrison Investment Group
- Gladstone Capital Partners
- Golub Capital Partners
- Icon Capital
- ICP Capital
- Madison Capital Company
- Monroe Capital
- Medley Capital
- MFC Capital Funding
- Newstar Financial
- NXT Capital
- Pennant Park Capital
- Private Capital Solutions
- RedRidge Finance Group
- Sankaty
- Stairway Capital
- Stonehenge Capital
- Steel City Capital Funding
- Triangle Capital Partners
- Transitional Investors LLC
- US Capital Partners
- White Fence Capital
- York Street Capital Partners

Any additional lenders contacted by Ablum Brown on MacFarlane's behalf will be added to the list and presented to the Company.

2. **COMPENSATION**

As consideration for the services to be performed by Ablum Brown, the Company agrees to pay Ablum Brown the following compensation:

(A) An Investment Banking Fee (the "Fee") payable in full at the initial closing of the commitment financing equal to:
1. Four percent (4%) of the First Thirty Million ($30,000,000) of Financing;
2. Three percent (3%) of the Second Thirty Million ($30,000,000) of Financing; and
3. Two Percent (2%) of the Third Thirty Million ($30,000,000) of Financing;

The Fee will be based upon the commitment level of Financing provided and not actual usage or draw down by the Company. The Fee will be calculated based upon the maximum commitment provided at closing. However, if during the 24 month period following the date of the initial closing of commitment financing if the lender commitment is increased then an additional Fee due will be payable at the date of increase of the commitment. If, in the twenty four (24) months following either: (a) the date the Financing is placed or (b) the date of termination of this Engagement Letter by either party or (c) the natural termination of this Engagement Letter, if the Company, or its successors, assigns, subsidiaries, wholly owned entities receive any commitments or funding from the parties introduced by Ablum Brown (or any funding party previously introduced pursuant to the The London Manhattan Company Agreement dated 08/05/2010), then Ablum Brown and The London Manhattan Company shall be entitled to compensation based on such commitments or funding in accordance with paragraph 2(A);

(B) In the event Ablum Brown agrees to provide additional services to the Company (other than the services specifically described above), then the Company shall pay additional fees to Ablum Brown in such amounts as shall be customary given the nature of the services provided, and such services shall be provided upon such terms as the Company and Ablum Brown shall mutually agree.

4

3.  **Expenses**

    Ablum Brown shall bear the costs of any incidental expenses unless otherwise approved in advance by the Company.

4.  **Term and Termination**

    This Engagement Letter and Ablum Brown's engagement hereunder may be terminated by either the Company or Ablum Brown effective upon thirty (30) days' prior written notice thereof to the other party; provided, however, that: (a) termination of Ablum Brown's engagement hereunder shall not affect the Company's obligations set forth in Article I and Sections A and D of Article III of the attached Standard Terms and Conditions which obligations shall continue, (b) notwithstanding any such termination, Ablum Brown shall be entitled to all Fees paid or payable to Ablum Brown hereunder through the closing date of the Financing and for any Financing committed 24 months from the date of termination of this Agreement with an entity introduced by Ablum Brown and (c) any such termination of Ablum Brown's engagement hereunder shall not affect the Company's obligation to reimburse Ablum Brown's expenses accruing through the effective date of such termination.

5.  **Other Agreements**

    (A) The Standard Terms and Conditions attached hereto which set forth additional terms and conditions pertaining to Ablum Brown's engagement hereunder are an integral part of this Engagement Letter and the terms thereof are incorporated by reference herein and are hereby agreed to by the parties.

    (B) All payments to Ablum Brown hereunder shall be in United States dollars and shall be in the form of a wire transfer based on the following instructions:

    | | |
    |---|---|
    | Contact: | Sharonda Roston |
    | Phone: | 312-461-6155 |
    | Fax: | 312-293-4823 |
    | | |
    | Bank: | Harris Trust & Savings |
    | Account Name: | ABC & S Investments, Inc. |

        Routing #:        071000288
        Account #:      0001601269

Any fee or expense in making a payment hereunder shall be borne by the Company and not by Ablum Brown.

(C)    In rendering its services to the Company under this Engagement Letter, Ablum Brown shall not assume any responsibility for the Company's underlying business decision to effect any transaction or for any economic, financial or other consequences that may arise out of such transaction or Ablum Brown's engagement under this Engagement Letter. The Company acknowledges that Ablum Brown's role is only advisory and that the Company will make the final determination of value, pricing, and terms and conditions of any transaction in which it engages.

(D)    This Engagement Letter may be executed in counterparts, each of which together shall be considered a single document.

Very truly yours,

ABLUM BROWN AND COMPANY

By: _____
Thomas Ablum
President

ACCEPTED AND AGREED TO:

MacFarlane Group, Inc.

By: _____
Name: Brian McGowan
Title: Executive Vice President – Corporate Relations

## STANDARD TERMS AND CONDITIONS

The following standard terms and conditions (the "Standard Terms and Conditions") set forth below are an integral part of the Engagement Letter between Ablum Brown and Company ("Ablum Brown"), and **MacFarlane Group, Inc.** (the "Company") dated **January 13, 2011** (the "Engagement Letter"), attached hereto. The parties have indicated their acceptance of the Standard Terms and Conditions by execution of the Engagement Letter.

## ARTICLE I
## INDEMNIFICATION

A.  In partial consideration for the services to be rendered under the Engagement Letter, the Company hereby indemnifies and holds harmless Ablum Brown, and its respective members, partners, shareholders, stockholders, principals, directors, officers, employees, affiliates, agents, independent contractors, representatives and any persons retained in connection with the performance of the services described in the Engagement Letter (each, an **"Indemnified Party"** and, collectively, the **"Indemnified Parties"**), from and against any and all claims, losses, damages, deficiencies, liabilities (joint or several), lawsuits, judgments, costs and expenses as incurred (including, without limitation, reasonable attorneys' fees, interest, penalties, travel expenses, expenses in giving testimony or furnishing documents pursuant to a subpoena or otherwise and all amounts paid in investigation, defense or settlement of any of the foregoing) (collectively, **"Damages"**), which, directly or indirectly, arise out of, are based upon or are related to the engagement of Ablum Brown pursuant to the Engagement Letter or the services performed by Ablum Brown in connection therewith, including, without limitation, (i) the failure of Company to obtain any Financing for any reason or, in the event Company obtains any Financing, the failure of Company to obtain any Financing in an amount sufficient to allow Company to extinguish its current outstanding loans, (ii) the failure of any Investor or Lender to perform any of its agreed upon obligations with respect to any Financing for any reason, including, without limitation, the failure of such Investor or Lender to fund any such Financing (iii) any incorrect, incomplete or misleading information supplied by Company or any of its employees, agents, representatives or affiliates or any misrepresentation made or assented to by Company or any of its employees, agents, representatives or affiliates, (iv) any assertion or representation made by Company or any of its employees, agents, representatives or affiliates to a third party that a representation, assurance or guaranty has been made by or on behalf of Ablum Brown that any Financing will be funded or (v) any other brokers or agents other than Ablum Brown who assert a right or interest in any Financing or claim to be entitled to the

8

payment of any Fee or commission in connection therewith. Company will promptly upon Ablum Browns request reimburse Ablum Brown for all payments made by Ablum Brown, which are within the scope of these indemnification provisions (or, at Ablum Browns election, timely make all such payments directly on behalf of Ablum Brown). The Company hereby acknowledges that none of the Indemnified Parties has made any representation, warranty or guaranty that any of the Indemnified Parties will be able to obtain any Financing and no Indemnified Party shall be liable to the Company for the failure of Company to obtain any Financing.

B. If any action, suit, proceeding or investigation is commenced, as to which Ablum Brown proposes to demand indemnification, it shall notify the Company with reasonable promptness; provided, however, that any failure by Ablum Brown to notify the Company shall not relieve the Company from its obligations hereunder. Ablum Brown shall have the right to retain counsel of its own choice to represent it, and the Company shall pay the fees, expenses and disbursements of such counsel. To the extent consistent with its professional responsibilities, such counsel shall cooperate with the Company and any counsel designated by the Company. The Company shall be liable for any settlement of any claim against the Indemnified Parties made with the Company's written consent, which consent shall not be unreasonably withheld. The Company shall not, without the prior written consent of Ablum Brown, settle or compromise any claim, or permit a default or consent to the entry of any judgment in respect of which indemnification has been or could be sought hereunder, unless such settlement, compromise or consent includes, as an unconditional term thereof, the giving by the claimant to the Indemnified Parties of a complete, unconditional and irrevocable release from all liability in respect of such claim.

C. The Company agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) for any damages, costs or expenses sustained by the Company (or any person claiming through the Company) unless a court having competent jurisdiction shall have determined by final judgment (not subject to further appeal) that such damages, costs and/or expenses resulted primarily and directly from the willful malfeasance or gross negligence of such Indemnified Party.

D. In the event that the indemnity provided for herein is for any reason held unenforceable, then the Company, on the one hand, and Ablum Brown, on the other hand, shall contribute to the Damages paid or payable by an Indemnified Party in accordance with the relative benefits received by the Company, on the one hand, and Ablum Brown, on the other hand, and also the relative fault of the Company on the one hand, and Ablum Brown, on the other hand, in connection with the statements, acts or omissions which had resulted in such Damages, and the relevant equitable considerations shall also be taken into account. Notwithstanding the foregoing provisions of this Article I, Ablum Brown's

share of the liability hereunder shall not exceed the amount of fees actually received by it under the Engagement Letter (excluding any amounts received as reimbursement of legal fees and expenses incurred by it).

      E.     The Company's indemnity, contribution, reimbursement and other obligations hereunder shall be in addition to any liability that the Company may otherwise have, at common law or otherwise, and shall be binding on the Company's successors and assigns. In the event the Company considers entering into one or a series of transactions involving a merger or other business combination or dissolution or liquidation of all or a significant portion of its assets, the Company shall promptly notify Ablum Brown in writing. If requested by Ablum Brown, the Company shall then establish alternative means of providing for the payment of the obligations set forth herein on terms and conditions reasonably satisfactory to Ablum Brown.

      F.     The provisions of this Article I shall apply to Ablum Brown's engagement under the Engagement Letter, activities relating to such engagement occurring prior to the date hereof, and any subsequent modification of or amendment of the Engagement Letter, and shall remain in full force and effect following the completion or termination of such engagement.

## ARTICLE II
## INFORMATION

      A.     The Company shall make available to Ablum Brown financial and other information requested by it to carry out its engagement hereunder and will provide Ablum Brown with access to the Company's officers, directors, employees, independent accountants and legal counsel. The Company agrees that Ablum Brown in rendering its services to the Company under the Engagement Letter will be entitled to rely entirely, without independent verification, upon (1) information supplied by the Company, which information the Company represents and warrants shall at all times during the period of Ablum Brown's engagement hereunder be complete and accurate in all material respects and not misleading, and (2) publicly available information. The Company further represents and warrants that any projections provided by it to Ablum Brown shall have been prepared in good faith and will be based upon assumptions, which, in light of the circumstances under which they are made, are reasonable.

      B.     In connection with its engagement by the Company pursuant to this Engagement Letter, the Company may be supplying to Ablum Brown certain confidential information concerning the Company and its businesses, operations and plans ("Confidential Information"). Ablum Brown hereby agrees to treat with confidentiality all

Confidential Information provided by and relating to the Company and to use such Confidential Information solely for purposes consistent with its engagement as described herein. Ablum Brown agrees not to disclose Confidential Information to any third party (other than directors, officers, employees or outside advisors of Ablum Brown) without the prior written consent of the Company. The foregoing provisions shall not be applicable to any information that was known to Ablum Brown prior to the date of this Engagement Letter, that is publicly made available or otherwise becomes public knowledge other than through a breach by Ablum Brown of its agreements contained herein, or that is required to be disclosed by Ablum Brown by judicial or administrative process in connection with any action, suit, proceeding or claim or otherwise by applicable law. Information shall be deemed "publicly available" if it becomes a matter of public knowledge, is in the public domain, is contained in materials available to the public or is obtained by Ablum Brown from any source other than the Company (or the Company's directors, officers, employees or outside advisors), provided that such source is not, to the knowledge of Ablum Brown, bound by a confidentiality agreement with the Company with respect to such information.

## ARTICLE III
## ADDITIONAL AGREEMENTS

A. Ablum Brown has been retained as an independent contractor with no fiduciary or agency relationship with the Company or to any other party. All opinions, reports, analyses and advice (oral or written) rendered by Ablum Brown pursuant to the Engagement Letter are intended solely for the benefit and use of the officers, directors, and legal and financial advisors of the Company in considering the matters to which the Engagement Letter relates, and may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to, without the prior written consent of Ablum Brown. In addition, the Company agrees that any materials prepared with Ablum Brown's assistance, including any financing memoranda, shall not be used, reproduced, disseminated, quoted or referred to at any time or in any manner except with the prior written consent of Ablum Brown. Any termination of Ablum Brown's engagement under this Engagement Letter shall not affect the Company's obligation to comply with this section.

B. The Company agrees that for whatever reason the Company does not pay Ablum Brown Fees earned as provided and outlined in the Engagement Letter and Ablum Brown retains counsel to collect and adjudicate for the collection of fees earned, the Company agrees that any and all legal costs and appropriate and customary expenses associated with the collection and legal effort will be reimbursed to Ablum Brown by the Company.

C.   The Company agrees that Ablum Brown may place advertisements in financial and other news media at its own expense, describing its services to the Company under the Engagement Letter.

D.   Any notice given under this Engagement Letter shall be in writing and shall be mailed or delivered: (a) if to the Company, at its offices at **6950 W 56th Street Mission, KS 66202.** Attention: **Brian McGowan;** and (b) if to Ablum Brown, at its main offices at 550 N Kingsbury Suite 614, Chicago, IL 60654, Attention: President.

E.   The validity and interpretation of this Engagement Letter shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules). The Company irrevocably submits to the exclusive jurisdiction of the Federal and Illinois State courts located in Cook County of Chicago in the State of Illinois for the purpose of any suit, action or other proceeding arising out of or related to this Engagement Letter, which is brought by or against the Company and agrees not to commence any such action, suit or proceeding other than in such courts. The parties hereby waive any right to trial by jury in connection with any dispute, action or proceeding arising out of or related to this Engagement Letter, or any matter contemplated hereby.

F   This Engagement Letter incorporates the entire understanding of the parties and supersedes all previous agreements and understandings between Ablum Brown and the Company relating to the subject matter hereof. This Engagement Letter may not be amended or modified except in writing, executed by the Company and Ablum Brown. This Engagement Letter shall be binding upon Ablum Brown and the Company and their respective successors and assigns. Neither party may assign or transfer its rights or obligations under this Engagement Letter without the prior written consent of the other party, except that Ablum Brown may without consent assign or transfer this Engagement Letter to any successor entity. This Engagement Letter does not confer any rights upon any stockholder, owner, partner or member of the Company, or any other person not a party hereto.

G.   To help the United States Federal government fight the funding of terrorism and money laundering activities, Federal law and FINRA rules require all FINRA members and affiliates, such as ABC, to obtain, verify, and record information that identifies each entity that engages ABC for an advisory assignment, regardless of funding or closing of any transaction or placement of securities. The Company agrees to provide promptly such information or documentation as ABC is required by law, regulation or directive to verify or obtain in this regard.

End of the Standard Terms and Conditions