UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABC & S, INC. d/b/a ABLUM BROWN & CO., | ) ) ) | |
| Plaintiff, | ) ) | No. 13 C 07480 |
| v. | ) ) | Judge Edmond E. Chang |
| MACFARLANE GROUP, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff ABC & S, Inc., doing business as Ablum Brown & Company, filed this action against Defendant MacFarlane Group, Inc. for breaching a contract under which Ablum Brown was supposed to provide financial-advisory and investment-banking services, in exchange for a fee.[1] R. 1, Compl. Specifically, Ablum Brown alleges that MacFarlane failed to pay a $1.2 million investment banking fee that Ablum Brown earned under the contract. *Id.* ¶¶ 13-20. MacFarlane now moves for summary judgment. R. 42, Mot. Summ. J. For the reasons discussed below, MacFarlane's motion for summary judgment is granted.

---

[1]The Court exercises subject-matter jurisdiction under 28 U.S.C. § 1332 based on the complete diversity of the parties (Ablum Brown is an Illinois corporation with its principal place of business there; MacFarlane is a Nevada corporation with a Kansas principal place of business) and an amount in controversy exceeding $75,000. Citations to the docket are "R." followed by the entry number and, when necessary, the page/paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for MacFarlane's Statement of Facts) [R.75]; "PSOF" (for Ablum Brown's Statement of Additional Facts) [R. 74 at 17-20]; Pl.'s Resp. to DSOF (for Ablum Brown's Response to MacFarlane's Statement of Facts) [R. 74 at 1-17]; Def.'s Resp. to PSOF (for MacFarlane's Response to Ablum Brown's Statement of Facts) [R. 78 at 18-26].

## I. Background

In deciding MacFarlane's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). ABC & S, Inc. (doing business as Ablum Brown & Co.) is an Illinois corporation wholly-owned by Thomas Ablum. DSOF ¶¶ 2-3; Pl.'s Resp. DSOF ¶¶ 2-3. Thomas Ablum holds Series 7 and Series 79 licenses and is registered with the Financial Industry Regulatory Authority, Inc. (FINRA). DSOF ¶ 46; Pl.'s Resp. DSOF ¶ 46. To receive these licenses, FINRA requires individuals to be associated with a FINRA member-firm. FINRA Rule 1031. Thomas Ablum entered into an independent contractor agreement with Arete Wealth Management, Inc., a FINRA-registered broker-dealer, so that Arete could supervise Thomas Ablum's security-based transactions under FINRA rules. DSOF ¶¶ 49-51. Ablum Brown & Co. is not registered with FINRA. DSOF ¶ 46; Pl.'s Resp. DSOF ¶ 46.

In January 2011, MacFarlane, a Nevada corporation, needed funding to extinguish its existing debt and generate working capital to operate and expand its operations. DSOF ¶¶ 1, 4. To procure this funding, MacFarlane entered into the engagement agreement with Ablum Brown that is the sole subject of this lawsuit. *Id.* ¶ 5. The agreement, signed January 13, 2011, set out the terms by which Ablum Brown would "provide financial advisory and investment banking services" to MacFarlane "and its related entities." R. 75-7, Def.'s Exh. G, Engagement Letter. Ablum Brown was to help MacFarlane "obtain up to $90 million of (i) senior debt

financing or (ii) subordinated loan with or without warrants or (iii) a combination of subordinated loan with or without warrants and equity." *Id.* § 1(A) ("The equity can be either preferred stock or common stock or any combination.").

Under the compensation provision of the agreement, Ablum Brown would receive four percent of the first $30 million in financing, three percent of the second $30 million in financing, and two percent of the third $30 million. *Id.* § 2(A). This investment fee would be "payable in full at the initial closing" of the financing. *Id.* Ablum Brown would also receive this investment fee if MacFarlane "or its successors, assigns, subsidiaries, [or] wholly owned entities receive any commitments or funding from the parties introduced by Ablum Brown" within two years after the date the initial financing is placed or the agreement is terminated. *Id.* Ablum Brown alleges that it is owed an investment banking fee under the compensation provision of the agreement because MacFarlane received funding from a party introduced to MacFarlane by Ablum Brown. Compl. ¶ 13.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550

3

U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Under Illinois law,[2] contracts that violate valid state or federal statutes are generally void as a matter of law. *See T.E.C. & Assocs., Inc. v. Alberto-Culver Co.*, 476 N.E.2d 1212, 1220 (Ill. App. Ct. 1985); *see also K. Miller Constr. Co. v. McGinnis*, 938 N.E.2d 471, 478 (Ill. 2010) ("If the statute explicitly provides that a contractual term which violates the statute is unenforceable then, barring any constitutional objection, the term is unenforceable."). MacFarlane argues that its agreement with Ablum Brown is in violation of § 15 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, and is therefore unenforceable. R. 76, Def.'s Br. at 12-13. Section 15(a)(1) of the Exchange Act makes it "unlawful for any broker or dealer … to make use of the mails or any means or instrumentality of interstate

---

[2]The parties assume that Illinois law governs, and the Court will proceed on that basis. *See Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 561 (7th Cir. 2001).

4

commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security … unless such broker or dealer is registered in accordance with subsection (b) of this section." 15 U.S.C. §78o(a)(1). Subsection (b) requires broker-dealers to maintain a membership with a self-regulatory organization, which includes FINRA. 15 U.S.C. § 78o(b)(8) ("It shall be unlawful for any registered broker or dealer to effect any transaction in, or induce or attempt to induce the purchase or sale of, any security … unless such broker or dealer is a member of a securities association registered pursuant to section 78o-3 of this title."); *see also* 15 U.S.C. § 78o-3; *Fiero v. Fin. Indus. Regulatory Auth., Inc.*, 660 F.3d 569, 571 (2d Cir. 2011) ("FINRA is … a national securities association registered with the SEC pursuant to the Maloney Act of 1938, 15 U.S.C. § 78o-3, *et seq.*"). Section 29(b) of the Exchange Act further states that "[e]very contract … the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void." 15 U.S.C. § 78cc(b) (including exceptions not relevant here).

On its face, the agreement between Ablum Brown and MacFarlane encompasses services that would require registration under § 15 of the Exchange Act. In generating financing for MacFarlane, Ablum Brown would be involved in issuing preferred or common stock on MacFarlane's behalf. Def.'s Exh. G, Engagement Letter § 1(A). This would certainly be an "attempt to induce the purchase or sale of" a security by Ablum Brown. *See* 15 U.S.C. §78o(a)(1). Ablum

5

Brown even appears to concede that MacFarlane was an "issuer of securities," thus bringing the agreement under the umbrella of the Exchange Act. *See, e.g.,* R. 73, Pl.'s Resp. Br. at 15 ("[T]he Kansas statute exempts interactions with an issuer of securities, which is what the defendant was doing in order to obtain financing."). Indeed, Ablum Brown does not present any developed argument against MacFarlane's argument that the contract called for Ablum Brown to engage in conduct prohibited by §15(a)(1) of the Exchange Act. Because Ablum Brown would be attempting to induce the purchase of securities issued by MacFarlane under the agreement, the company would need to be registered. 15 U.S.C. §78o(a)(1). Ablum Brown concedes that it was not registered with FINRA. Pl.'s Resp. DSOF ¶ 46. And the entity that was registered, Arete, did not supervise or otherwise approve the transaction. *Id.* ¶ 60. Since § 29(b) explicitly states that a contract that involves the violation of the Exchange Act is void, 15 U.S.C. § 78cc(b), the engagement agreement between Ablum Brown and MacFarlane is unenforceable. *K. Miller Constr.*, 938 N.E.2d at 478.

Ablum Brown argues that MacFarlane's illegality defense fails because there is no private right of action under § 15(a). Pl.'s Resp. Br. at 17. In support of this argument, Ablum Brown cites several cases in which a party alleged an independent violation of § 15, rather than the affirmative defense of illegality. *See SEC v. Seabord Corp.*, 677 F.2d 1301, 1313-14 (9th Cir. 1982) (describing a case in which a mutual fund "asserted a claim against [a cross-defendant] under § 15 of the 1934 Act" and holding that there was no private right of action); *Asch v. Philips,*

6

*Appel & Walden, Inc.*, 867 F.2d 776, 777 (2d Cir. 1989) (holding that there was no private cause of action under § 15 when investors sued a brokerage firm for violating several sections of the Exchange Act); *Hayden v. Walston & Co.*, 528 F.2d 901, 901-02 (9th Cir. 1975) (holding that investors' "attempt to predicate a private cause of action on violation of the NASD rule requiring registration of salesman" was "unavailing"). But "[n]o private right of action under a statute is necessary to assert a violation of that statute as an affirmative defense." *Costello v. Grundon*, 651 F.3d 614, 622-29 (7th Cir. 2011) (determining that borrowers could assert an illegality affirmative defense against enforcement of a contract that allegedly violated §§ 7(d) and 29(b) of the Exchange Act); *see also Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 86 (1982) ("While only the [National Labor Relations Board] may provide affirmative remedies for unfair labor practices, a court may not enforce a contract provision which violates § 8(e) [of the National Labor Relations Act]."). Particularly when the statute also provides that contracts which violate it are void, as the Exchange Act does through § 29(b), "Congress must have assumed that the statute could be raised defensively in private litigation to preclude the enforcement of a contract." *Kaiser,* 455 U.S. at 85-86 (internal alterations and quotation marks omitted) (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 18 (1979)). Ablum Brown's resort to the absence of a private right of action therefore fails.

The only remaining question then, is whether Ablum Brown has set forth any facts that would suggest that the contract should be enforced because there was no

7

violation of §15(a)(1). *See Anderson*, 477 U.S. at 256 (holding that, in response to a properly supported motion for summary judgment, a plaintiff must "set forth specific facts showing that there is a genuine issue for trial"). It has not. Ablum Brown makes no argument that it was exempt from the registration requirements of § 15(a)(1). It makes no argument that the services described in the contract are not subject to regulation by the Exchange Act. It makes no serious argument that § 15 was not violated. *See* Pl.'s Resp. Br. at 17 n.3 (a one-sentence footnote, conclusorily stating without any citation to authority, that it is "[u]nlikely" that Ablum Brown violated the Exchange Act "given that [Ablum Brown] is wholly owned by Tom Ablum"); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived."). Apart from its irrelevant contention that there is no private right of action, Ablum Brown presents no legal authority or record evidence that would support enforcement of the contract.

With no additional facts from Ablum Brown, the undisputed facts before the Court demonstrate that the contract between the parties is void as a matter of law. The contract contemplates the provision of security-related services by Ablum Brown. *See* Def.'s Exh. G, Engagement Letter. Federal law requires that an entity be registered to provide security-related services. *See* 15 U.S.C. §78o(a)(1). Ablum Brown is not registered. *See* Pl.'s Resp. DSOF ¶ 46. The contract between Ablum Brown and MacFarlane is in violation of the Exchange Act and is thus void and unenforceable. *See K. Miller Constr.*, 938 N.E.2d at 478; *see also* 15 U.S.C. § 78cc(b)

(stating that contracts made in violation of the Exchange Act are void).³ MacFarlane's motion for summary judgment is granted.

As an alternative to the breach of contract claim, Ablum Brown asks for leave to amend its complaint to include claims for promissory estoppel and unjust enrichment. Pl.'s Resp. Br. at 18-19. Under Federal Rule of Civil Procedure 15(a), district courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend is not granted automatically. *See Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). "Although [Rule 15(a)] reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002)). Here, Ablum Brown was on notice that MacFarlane intended to present an illegality defense several months before it asked to amend its claim. *See* R. 31, Am. Answer and Affirmative Defenses at 7. It took no steps to amend at that time, and it provides no explanation for the delay. And with discovery closed, allowing the assertion of new claims would require even more delay in the case.

But more importantly, even if the Court were to allow the amendment, Ablum Brown would not be entitled to relief. Under Illinois law, a contract that

---

³Because the contract is unenforceable, the Court need not consider the parties' arguments surrounding the interpretation of the contract.

violates a law is "void *ab initio*." *People v. Caban*, 743 N.E.2d 600, 606 (Ill. App. Ct. 2001). And "a contract that is void *ab initio* is treated as though it never existed." *Ill. State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 821 N.E.2d 706, 713 (Ill. App. Ct. 2004). Thus, the general rule is that "parties to a void contract will be left where they have placed themselves." *Gamboa v. Alvarado*, 941 N.E.2d 1012, 1016-17 (Ill. App. Ct. 2011) (internal quotation marks and citation omitted); *see also USX Corp. v. Liberty Mut. Ins. Co.*, 645 N.E.2d 396, 404 (Ill. App. Ct. 1994) ("[O]ne cannot deploy the doctrine of promissory estoppel to enforce a promise which contravenes public policy and is resultantly unenforceable as a contract."). Because the amendment would be futile, Ablum Brown's motion for leave to amend its complaint to include claims for promissory estoppel and unjust enrichment is denied on that ground as well.

## IV. Conclusion

For the reasons stated above, MacFarlane's motion for summary judgment is granted. Ablum Brown's request to amend its complaint to allege causes of action for promissory estoppel or unjust enrichment is denied.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 22, 2015

10